UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BILL ROY HENDERSON,
    *Plaintiff*,

v.

ANGEL QUIROS, et al.
    *Defendants*.

No. 3:21-cv-1078 (VAB)

**INITIAL REVIEW ORDER ON AMENDED COMPLAINT**

On August 10, 2021, Bill Roy Henderson ("Plaintiff"), a sentenced inmate[1] currently confined within the custody of the Connecticut Department of Correction ("DOC") Corrigan-Radgowski Correctional Center ("Corrigan") brought this *pro se* action under 42 U.S.C. § 1983. *See* Compl., ECF No. 1 (Aug. 10, 2021).[2]

Mr. Henderson has alleged that Commissioner Angel Quiros, Corrigan Warden Robert Martin, Dr. Gerald Valletta, Lieutenant Jusamme, Dr. Johnny Wu, and Dr. Ingrid Feder violated his rights under the United States Constitution's Eighth Amendment and Fourteenth Amendment and the Connecticut Constitution, Article First, Sections 8 and 9. *See id* ¶¶ 1–13, 68–73.

More specifically, Mr. Henderson alleged that Defendants displayed deliberate indifference to his serious medical needs by not issuing him a suitable mattress or mattress topping for his back pain, and by denying him a single cell that he needed due to his sleep apnea. *See id.* ¶ 2. He also asserted Fourteenth Amendment Equal Protection Clause violation based on

---

[1] The Court may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website shows that Mr. Henderson was sentenced to sixty years of incarceration on March 22, 2002. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=210215.
[2] Mr. Henderson paid the filing fee on August 12, 2021.

1

the denial of the suitable mattress and single cell. *Id.* Mr. Henderson requested damages, declaratory judgment, and injunctive relief. *Id.* ¶¶ 74–82.

After initial review, the Court dismissed Mr. Henderson's Complaint for failure to state any plausible claims, but it permitted him to file an Amended Complaint to correct the deficiencies identified in the Court's Initial Review Order. Initial Review Order, ECF No. 5 (Nov. 17, 2021) ("IRO").

Mr. Henderson has now filed an Amended Complaint against the same Defendants asserting that he has been deprived of a suitable mattress or mattress topping in violation of the Eighth and Fourteenth Amendments and the Connecticut Constitution, Article First, Sections 8 and 9. Am. Compl., ECF No. 6 (Dec. 14, 2021) ("Am. Compl.").

After a review of the Amended Complaint, under the Court's duty to screen prisoner complaints under 28 U.S.C. § 1915A, the Court concludes that Mr. Henderson has stated plausible Eighth Amendment claims.

## I.     BACKGROUND[3]

Mr. Henderson's claims allegedly arise from a failure by DOC staff to provide him with adequate medical care for his back pain by prescribing or providing him with a "double mattress," "foam egg crate mattress" topping, or a "therapeutic mattress." Am. Compl. ¶ 2. Mr. Henderson's back pain allegedly has become "unbearable" in recent years and was constant during the last year. *Id.* ¶ 15. The pain allegedly started after he had to sleep on the defective DOC mattresses that are only designed to support 70 pounds of pressure before reaching maximum compression. *Id.* ¶¶ 16, 19.

---

[3] All factual allegations are drawn from the amended complaint. (ECF. No. 6).

Mr. Henderson and other inmates are allegedly locked in a cell for twenty-one hours per day and spend a large portion of their time lying on a mattress. *Id.* ¶ 17. A new mattress allegedly reaches its maximum compression in as little as ten to fourteen days, at which point the mattress allegedly provides little or no support for inmates. *Id.* ¶¶ 22–23. Mr. Henderson has allegedly found that a compressed mattress feels similar to a steel platform, which allegedly aggravates his mid- to lower-back. *Id.* ¶ 23. The polyester batting core material allegedly bunches up in areas and leaves hard lumps that put painful pressure on his hips, legs, and back. *Id.* ¶ 24. The vinyl covering also allegedly cracks and tears, thereby leaving sharp edges along the top and sides that allegedly causes pain to the inmate. *Id.* ¶ 25.

Defendants are all allegedly aware of the poor condition of the mattresses supplied to the inmate population due to the sheer volume of inmate complaints. *Id.* ¶ 26. Before the inmate healthcare management by Dr. Johnny Wu, medical staff allegedly prescribed double mattresses or egg crate toppings for inmates who suffered from pain in their backs, necks, hips, or shoulders. *Id.* ¶¶ 28, 37. In June 2018, the DOC allegedly took over the management of the inmate medical care after Connecticut Managed Health Care (which was managed by Dr. Wu) allegedly failed to provided healthcare that satisfied constitutional standards. *Id.* ¶ 33.

There is allegedly a policy and practice within DOC for inmates to receive a new mattress every year. *Id.* ¶ 29. As a mattress will allegedly "go bad" within as little as ten to fourteen days, an inmate is left to suffer for the duration of the remaining year to receive a replacement mattress. *Id.* ¶ 30. The time Mr. Henderson spends on his mattress has allegedly become "unbearable" due to his constant back pain. *Id.* ¶ 31.

Mr. Henderson allegedly wrote to the medical unit while housed at MacDougall-Walker

Correctional Institution ("MacDougall") about his back pain in 2002 and 2009, but he allegedly never received a foam core or double mattress to ease his back pain. *Id.* ¶¶ 40–41. In 2009, Licensed Practical Nurse ("LPN") Boute allegedly prescribed Motrin and recommended that Mr. Henderson receive a double mattress from custody staff. *Id.* ¶ 41. Mr. Henderson also allegedly wrote to the MacDougall Warden and Deputy Warden to request the double mattress recommended by the medical staff. *Id.* ¶¶ 42, 43.

In November 2009, Mr. Henderson was allegedly transferred to Garner Correctional Institution; he allegedly then contacted Dr. Valletta about his back pain caused by sleeping on a defective mattress. *Id.* ¶ 44. On July 15, 2016, Dr. Valletta allegedly recommended that Mr. Henderson write to the custody staff to request a foam or double mattress. *Id.* Mr. Henderson allegedly made such request to Warden Semple and Deputy Warden Falcone, but his request was allegedly denied. *Id.* At the same time, inmate Dunbar was allegedly permitted to have a "double mattress." *Id.*

Mr. Henderson was allegedly transferred from Garner to Corrigan on December 13, 2018. *Id.* ¶ 45. In 2019 and 2020, Mr. Henderson allegedly wrote several requests to Dr. Feder about his back pain; every time he saw Dr. Feder, she allegedly informed him that mattresses are issued by custody staff rather than the medical staff. *Id.*

In January 2021, after allegedly speaking to Warden Martin about his inadequate mattress, Mr. Henderson allegedly wrote a request to Warden Martin. *Id.* ¶ 46. Warden Martin allegedly responded that a double mattress request required a doctor's order. *Id.* ¶ 46.

Mr. Henderson then allegedly twice wrote to Commissioner Quiros about the mattress issue and about how his mattress was causing him pain and suffering. *Id.* ¶ 47. Both requests

were allegedly not answered by Commissioner Quiros. *Id.* Instead, Mr. Henderson's requests were allegedly forwarded to Warden Martin, who denied the requests on March 5, 2021. *Id.*

On March 5, 2021, after Mr. Henderson allegedly spoke to Warden Martin about his denial of the mattress request, he spoke to Dr. Feder. *Id.* ¶ 48. He allegedly explained to Dr. Feder that Warden Martin had stated that a special mattress requires a doctor's order. *Id.* Dr. Feder allegedly responded that mattresses can only be issued by custody staff and "NOT medical." *Id.*

On March 18, 2021, Mr. Henderson allegedly spoke to Lieutenant Jusamme to request a double mattress as had been provided to other inmates. *Id.* ¶¶ 49, 54. Lieutenant Jusamme allegedly denied this request; he allegedly explained that he was unable to approve the request as the warden had already denied Mr. Henderson's request. *Id.* ¶¶ 49, 54. When Mr. Henderson later asked Warden Martin to reconsider his denial, Warden Martin stated "No" and walked away. *Id.* ¶ 54.

Mr. Henderson first filed a grievance on January 29, 2021. *Id.* ¶ 51. In March 2021, DOC staff member J. Brennan allegedly responded to Mr. Henderson's first grievance and informed him that a foam core mattress was ordered for Plaintiff on January 11, 2021. *Id.*

On April 19, 2021, Mr. Henderson allegedly received a replacement mattress that was green in color, but he allegedly found that it caused him more pain than his prior mattress. *Id.* ¶ 53. Defendants allegedly refused to provide Mr. Henderson a double mattress. *Id.*

Mr. Henderson allegedly filed a second grievance on November 3, 2021, but never received a response even after allegedly writing two follow-up requests seeking a response. *Id.* ¶ 50. Mr. Henderson has allegedly since written a Health Services Review, but he has not received

a response thereto. *Id.* ¶ 55. Mr. Henderson also wrote to Director of Healthcare Dr. Wu about his "mattress issue," but he has not received a double mattress. *Id.* ¶ 55.

Defendants have allegedly denied Mr. Henderson the equal benefits and services that they have provided to other inmates like Ricardo Collins and Chadwick Louis. *Id.* ¶ 52.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based, and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## III.   DISCUSSION

Mr. Henderson has asserted Section 1983 claims for Eighth Amendment and Fourteenth Amendment Equal Protection Clause violations against Defendants in their individual and official capacities.

The Court will first consider whether Mr. Henderson has stated any plausible constitutional claims against Defendants in their individual capacities.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A plaintiff's conclusory allegations about what a defendant "should know" about are insufficient to allege personal involvement. *Monroe v. Cnty. of Rockland*, No. 21-cv-5244 (VB), 2021 WL 4084149, at *1 (S.D.N.Y. Sept. 8, 2021); *see also Kravitz v. Leis*, No. 9:17-cv-0600, 2019 WL 1332774, at *8 (N.D.N.Y. Feb. 11, 2019) (finding defendant's "general knowledge" of plaintiff's religious affiliation "insufficient to demonstrate personal involvement," because "plaintiff must show 'some tangible connection' between the unlawful conduct and the defendant").

In *Tangreti v. Bachmann*, 903 F.3d 609 (2d Cir. 2020), the Second Circuit clarified the pleading standard applicable to supervisory defendants in cases concerning alleged violations of constitutional rights. The Second Circuit explained that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' . . . The violation must be established against the supervisory official directly." *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).

A. **The Eighth Amendment Deliberate Indifference Claims**

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. To meet the objective

7

element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

1. **The Inadequate Mattress Claim**

Because "sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment," a prisoner can raise a constitutional claim that his mattress is "so inadequate as to constitute an unconstitutional deprivation." *See Walker v. Schult*, 717 F.3d 119, 126–127 (2d Cir. 2013). To establish an Eighth Amendment claim alleging a deficient mattress, courts have required a prisoner plaintiff to allege either (1) a medical condition requiring a non-standard mattress to protect against further serious damage to the prisoner's health or a (2) medical condition caused by the inadequate mattress. *See Jones v. City of New York*, No. 18-cv-1937 (VSB), 2020 WL 1644009, at *7 (S.D.N.Y. Apr. 2, 2020) (collecting cases).

For initial review purposes, Mr. Henderson has sufficiently alleged that he had an objectively serious need for a non-compressed mattress because his compressed mattress caused

him severe back pain and the time he spends on his mattress is unbearable. *See Jones*, 2020 WL 1644009, at *8 (finding objective element satisfied where allegations "g[a]ve rise to a plausible, common-sense inference that the standard-issue mattress either exacerbates or causes Plaintiff's chronic and substantial back pain").

Thus, the Court next considers whether Mr. Henderson has sufficiently alleged the subjective element as to each Defendant.

### 2. Claims Against Dr. Valletta

The Court's prior initial review concluded that Mr. Henderson had not stated an Eighth Amendment violation against Dr. Valletta, who had allegedly recommended that he contact custody to request a special mattress. IRO at 10. Mr. Henderson's Amended Complaint asserts the same allegations against Dr. Valletta. Thus, the Court concludes that he has not alleged facts to suggest that Dr. Valletta has acted with any conscious disregard to Mr. Henderson's need for specialized bedding.

Accordingly, the Eighth Amendment claim against Dr. Valletta must be dismissed as not plausible.

### 3. Claims Against Dr. Feder

The Court's prior initial review also dismissed the Eighth Amendment claim against Dr. Feder because Mr. Henderson's allegations only suggested that Dr. Feder had recommended an inappropriate mattress for his needs but not that she had acted with conscious disregard of his serious need for specialized bedding for his back pain. IRO at 10.

Mr. Henderson's Amended Complaint asserts allegations indicating that Dr. Feder refused to provide him with a prescription for a specialized mattress or mattress topping to

9

relieve his back pain despite her awareness of Warden Martin's instruction that Mr. Henderson required a doctor's order to obtain such specialized bedding. *See* Am. Compl. ¶ 48. Mr. Henderson has also alleged that he made Dr. Feder aware of his back pain by writing and speaking to her "several times." *Id.* ¶ 45.

An inmate's preference for certain medical treatment does not give rise to a constitutional claim. S*ee Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). A medical provider may, however, act with deliberate indifference by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive. *Id.* at 703–04; *see also Braham v. Perelmuter*, No. 3:15-cv-1094 (JCH), 2017 WL 3222532, at *16–17 (D. Conn. July 28, 2017).

Here, Mr. Henderson's Amended Complaint indicates that Dr. Feder was aware that Mr. Henderson's request for a specialized mattress was denied by Warden Martin for lack of a medical prescription, yet Dr. Feder continued to insist that he could only obtain such mattress through custody staff. *See* Am. Compl. ¶ 48. Thus, Mr. Henderson's allegations suggest that Dr. Feder's decision was not based on sound medical judgment but rather on some unsubstantiated direction from custody staff.

Accordingly, Mr. Henderson may proceed on his Eighth Amendment claim against Dr. Feder in her individual capacity beyond this initial review.

### 4. Claims Against Warden Martin

On prior initial review, the Court concluded that Mr. Henderson had failed to state a

plausible Eighth Amendment claim. IRO at 10–11. Specifically, the Court noted that Mr. Henderson had alleged that Warden Martin instructed him about how he could obtain a special mattress, which failed to suggest that the warden had acted with a conscious disregard to Mr. Henderson's need for a mattress. *Id.*

Mr. Henderson's Amended Complaint also fails to state a plausible claim against Warden Martin for the same reason. He has alleged that Warden Martin denied his request for a special mattress but instructed him that a double or special mattress required a doctor's order. Am. Compl. ¶ 47–48.[4] Mr. Henderson has neither alleged that Warden Martin denied his request after Mr. Henderson provided him with a medical prescription nor that he provided Warden Martin with any medical information to substantiate his need for a special mattress. Thus, Mr. Henderson's amended allegations fail to raise an inference that Warden Martin acted with a conscious disregard to his need for such mattress by allegedly denying him a special mattress without a medical prescription.

Accordingly, the Court must dismiss as not plausible the Eighth Amendment claim against Warden Martin in his individual capacity.

**5. Claims Against Lieutenant Jusamme**

Mr. Henderson's prior Complaint had not alleged facts indicating deliberately indifferent conduct by Lieutenant Jusamme. IRO at 11. Mr. Henderson's Amended Complaint alleges that Lieutenant Jusamme denied his request for a double mattress because Warden Martin had previously denied the same request. Am. Compl. ¶¶ 49, 54.

Absent any allegations to suggest that Lieutenant Jusamme had authority to grant the

---

[4] He also alleges that Warden Martin refused to reconsider his denial of the double mattress request. *Id.* ¶ 54.

mattress request but refused to do so, Mr. Henderson's Amended Complaint has not raised any inference that Lieutenant Jusamme acted with deliberate indifference to the risk of harm posed by not issuing him a specialized mattress or mattress topping. *See Warwick v. Doe*, No. 3:20-cv-227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that absent facts suggesting that defendant actually had and failed to exercise power to get plaintiff in to see dental surgeon sooner, plaintiff's allegations amounted to at most negligence).

Accordingly, the Court will dismiss the Eighth Amendment claims against Lieutenant Jusamme as not plausible.

### 6. Claims Against Dr. Wu

In its prior initial review, the Court noted that Mr. Henderson complained that Dr. Wu's management policies had allegedly resulted in his deprivation of an appropriate mattress, but Mr. Henderson had failed to allege any facts suggesting that Dr. Wu had subjective knowledge that his conduct posed a substantial risk of serious harm to Mr. Henderson. IRO at 11.

In his Amended Complaint, Mr. Henderson alleges that he wrote to Dr. Wu about his "mattress issue" but Dr. Wu failed to approve the request for a double mattress. Am. Compl. ¶ 55. Mr. Henderson has not alleged facts to describe the contents of his request or Dr. Wu's response. Mr. Henderson's allegations suggest, however, that Dr. Wu was made aware of Mr. Henderson's need for a special mattress and could have provided him with a prescription for a mattress.

Accordingly, at this initial stage in the matter, the Court will permit Mr. Henderson's Eighth Amendment claim to proceed against Dr. Wu in his individual capacity for further development.

### 7. Claims Against Commissioner Quiros

The Court previously dismissed Mr. Henderson's claim against Commissioner Quiros because he had not alleged facts indicating Quiros had acted with deliberate indifference to his need for a special mattress. IRO at 11.

Mr. Henderson's Amended Complaint alleges that he wrote to Commissioner Quiros twice about his "mattress issue" and his "pain and suffering," but both requests were not answered by Commissioner Quiros, who allegedly forwarded them to Warden Martin. Am. Compl. ¶ 47.

Receipt by a supervisory official of a letter from an inmate, without more, is generally considered insufficient to establish the official's personal involvement in a § 1983 constitutional claim. *See Braxton v. Bruen*, No. 9:17-CV-1346 (BKS/ML), 2021 WL 4950257, at *6 (N.D.N.Y. Oct. 25, 2021) (citing *Jones v. Annucci*, No. 16-cv-3516, 2018 WL 910594, at *11–12, (S.D.N.Y. Feb. 14, 2018) (noting that Acting Commissioner's failure to respond to the plaintiff's letter complaining of unconstitutional conduct, "without more, does not plausibly allege his personal involvement" and collecting cases) (citations omitted)). In this instance, Commissioner Quiros forwarded the requests to Warden Martin. Thus, Mr. Henderson's amended allegations fail to reflect that Commissioner Quiros acted with a conscious disregard to Mr. Henderson's need for a special mattress.

Accordingly, Mr. Henderson's Eighth Amendment claim against Commissioner Quiros in his individual capacity must be dismissed as not plausible.

### B. The Fourteenth Amendment Equal Protection Claim

The Court's prior initial review order dismissed Mr. Henderson's Fourteenth Amendment

equal protection claim because his allegations failed to raise an inference that no rational basis exists for the differential treatment with respect to provision to inmates for a specialized mattress. IRO at 13–14.

In his Amended Complaint, Mr. Henderson claims that he was treated differently than other inmates such as Collins, Dunbar, and Louis, who were provided with specialized mattresses. Am. Compl. ¶¶ 44, 52, 61.

Mr. Henderson's Amended Complaint fails to raise a plausible Fourteenth Amendment equal protection claim under a "class of one" theory for the same reasons stated in the Court's prior initial review. *Id.* Mr. Henderson's amended allegations do not suggest that he has been discriminated against based upon an impermissible consideration such as race, national origin, religion, or any other suspect class; nor do his amended allegations raise any inference that any comparators were so similarly situated to him as to raise an inference that no rational basis exists for the differential treatment. *See* IRO at 17 (quoting *Gray v. Bansley/Anthony/Burdo LLC*, No. 3:19-CV-1869 (KAD), 2020 WL 292230, at *5 (D. Conn. Jan. 21, 2020) (dismissing prisoner complaint on initial review where allegations did not "show an extremely high degree of similarity between [plaintiff] and the persons to whom [h]e compare[s] [himself]" (alteration in original)).

Accordingly, Mr. Henderson's claims of equal protection violation must be dismissed as not plausible.

### C. The Official Capacity Claims

Mr. Henderson requests injunctive relief and a declaratory judgment against the defendants in their official capacities. Specifically, he seeks declarations that long-term use of

the current standard issue mattress constitutes cruel and unusual punishment. Am. Compl. ¶ 64. Mr. Henderson also requests that the Court order that he be provided with a double or therapeutic mattress or topping and with an MRI for diagnosis. *Id.*

As an initial matter, any claims for money damages against the defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Mr. Henderson may proceed against a DOC official in his or her official capacity, to the extent he alleges an ongoing constitutional violation. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005).

"A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). The exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Further, any prospective relief regarding prison conditions must be "narrowly drawn, extend[] no further than necessary to correct the violation of a federal right, and [be] the least intrusive means necessary to correct the violation." *Brown v. Plata*, 563 U.S. 493, 530

(2011) (citing 18 U.S.C. § 3626(a)).

Unlike an individual capacity claim for monetary damages under Section 1983, personal involvement in the alleged constitutional violation is not a prerequisite to official capacity claims for injunctive relief. *See Hamilton v. Deputy Warden*, 2016 WL 6068196, at *13 (S.D.N.Y. Oct. 13, 2016. A claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation. *See Scozzari v. Santiago*, 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019).

Mr. Henderson's Amended Complaint plausibly alleges an ongoing Eighth Amendment violation based on his long-term use of DOC's standard issue mattress that causes him back pain and prevents him from sleeping.

Accordingly, Mr. Henderson's injunctive requests present a plausible request for prospective relief for the ongoing Eighth Amendment violation, which could plausibly be provided by Dr. Wu, Dr. Feder, or Warden Martin in their official capacities. At this early stage in the matter, the Court will permit this request for injunctive relief to proceed beyond initial review.

To the extent Mr. Henderson seeks declaratory judgment regarding the long-term use of the DOC standard issue mattress by all DOC inmates, such a request exceeds the scope of the ongoing Eighth Amendment violation at issue, which concerns only the mattress use by Mr. Henderson. Moreover, if Mr. Henderson were to prevail on his Eighth Amendment claim, a judgment in his favor would serve the same purpose as a declaration that his long-term use of the DOC standard issue mattress constituted cruel and unusual punishment.

"[D]ismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016). Thus, Mr. Henderson's request for declaratory relief is not distinct from the relief sought in his section 1983 claim and is dismissed. *See, e.g.*, *United States v. $2,350,000.00 in Lieu of 895 Lake Avenue*, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

Accordingly, the Court must dismiss as not plausible Mr. Henderson's request for declaratory relief.

### D. The State Law Connecticut Constitution, Article One, Sections 8 and 9, Claims

The Court's prior initial review declined to exercise jurisdiction over, and thereby dismissed without prejudice, Mr. Henderson's claims asserting violation of the Connecticut Constitution's Article First, sections 8 and 9 as such claims represent novel claims that are undeveloped under Connecticut law. IRO at 16–17. Mr. Henderson's Amended Complaint reasserts such Connecticut constitutional claims. Am. Compl. ¶¶ 57–59. As Mr. Henderson's claims under sections 8 and 9 still present new contexts for a cause of action under the Connecticut Constitution, the Court declines jurisdiction over these claims for the reason articulated in the Court's prior initial review order.[5] *Id.*

---

[5] *See Woolard v. Santiago*, No. 3:19-CV-1256 (VLB), 2020 WL 2079533, at *11 (D. Conn. Apr. 30, 2020) (private right of action under Article First, section 9 for punishment suffered by inmate during confinement at state prison facility is not established); *Torres v. Armstrong*, No. CV99-0427057S, 2001 WL 1178581, at *1, 6-7 & n.6 (Conn. Super. Ct. Sept. 6, 2001) (declining to recognize a private right of action for violation inmate's right under Article First, section 9 of the state constitution); *Gothberg v. Town of Plainfield*, 148 F. Supp. 2d 168, 187–88 (D. Conn. 2015) (declining to exercise supplemental jurisdiction over state constitutional claim under Article First, section 8); *see also Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005) (refraining from exercising supplemental

Accordingly, these claims will be dismissed without prejudice.

## ORDERS

For the foregoing reasons, the Court enters the following orders:

(1) The case shall proceed on Mr. Henderson's Eighth Amendment claims against Dr. Feder and Dr. Wu in their individual capacities and against Dr. Feder, Dr. Wu and Warden Martin in their official capacities. Mr. Henderson's Fourteenth Amendment claims are **DISMISSED** as not plausible under 28 U.S.C. §1915A. The Court declines to exercise jurisdiction over Mr. Henderson's claims under the Connecticut Constitution, Article First, sections 8 and 9, and these claims are **DISMISSED without prejudice**.

(2) The Clerk of Court shall verify the current work address of Dr. Feder and Dr. Wu with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint to them at their confirmed addresses by **August 12, 2022**, and report on the status of the waiver request by **August 26, 2022**. If a Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the Amended Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file a response to the Amended Complaint, either an Answer or motion to dismiss, by **October 28, 2022**. If Defendants choose to file an Answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above.

---

jurisdiction over novel and undeveloped state constitutional claims based on Article I, seeking monetary damages and injunctive relief).

Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **March 17, 2023**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **April 21, 2023**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of July, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE