UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BILL ROY HENDERSON,
    *Plaintiff*,

v.

ANGEL QUIROS, et al.
    *Defendants*.

No. 3:21-cv-1078 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

On August 10, 2021, Bill Roy Henderson ("Plaintiff"), a sentenced inmate currently confined within the custody of the Connecticut Department of Correction ("DOC") Corrigan Correctional Center ("Corrigan") brought this *pro se* action under 42 U.S.C. § 1983. *See* Compl., ECF No. 1 (Aug. 10, 2021) ("Compl.").

In his original Complaint, Mr. Henderson alleged that Commissioner Angel Quiros, Corrigan Warden Robert Martin, Dr. Gerald Valletta, Lieutenant Jusamme, Dr. Wu, and Dr. Ingrid Feder violated his rights under the United States Constitution's Eighth Amendment and Fourteenth Amendment and the Connecticut Constitution, Article First, Sections 8 and 9. *See id.* ¶¶ 2–13, 68–73. After initial review, the Court dismissed Mr. Henderson's Complaint for failure to state any plausible claims, but it permitted him to file an Amended Complaint to correct the deficiencies identified in the Court's Initial Review Order. Initial Review Order at 17, ECF No. 5 (Nov. 17, 2021) ("IRO").

Mr. Henderson filed an Amended Complaint against the same defendants asserting that he has been deprived of a suitable mattress or mattress topping in violation of the Eighth and Fourteenth Amendments and the Connecticut Constitution, Article First, Sections 8 and 9. Am.

1

Compl. ¶¶ 2–13, 56–63, ECF No. 6 (Dec. 14, 2021) ("Am. Compl."). After a review of the Amended Complaint, consistent with the Court's duty to screen prisoner complaints under 28 U.S.C. § 1915A, the Court concluded that Mr. Henderson stated plausible Eighth Amendment claims against Dr. Wu and Dr. Feder in their individual and official capacities and against Warden Martin in his official capacity. Initial Review Order of Am. Compl. at 18–19, ECF No. 7 (July 22, 2022) ("IRO of Am. Compl.").

Defendants have filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Mr. Henderson's Eighth Amendment claim against Dr. Wu arguing the claim is barred by the statute of limitations. Defs.' Mot. to Dismiss, ECF No. 15 (October 28, 2022); Defs.' Mem. of Law in Support of its Mot. to Dismiss, ECF No. 15-1 (October 28, 2022) ("Mot."). Mr. Henderson has not filed a timely response to the motion to dismiss. Nor has he filed a motion for extension of time to do so.

For the reasons explained below, Defendants' motion to dismiss is **GRANTED**.

The only remaining claims in this case involve Mr. Henderson's Eight Amendment claim against Dr. Feder in his individual capacity and official capacity, and Warden Martin in his official capacity only.

I.      FACTUAL BACKGROUND[1]

The Court assumes familiarity with the factual background set forth in the Court's Initial Review Order for Mr. Henderson's Amended Complaint. IRO for Am. Compl. at 2–6. The Court includes only those facts relevant to its consideration of the pending motion to dismiss.

---

[1] All factual allegations are drawn from the Amended Complaint. Am. Compl.

Mr. Henderson's claims in his Amended Complaint arise from an alleged failure by DOC staff to provide him with adequate medical care for his back pain by prescribing or providing him with a "double mattress," "foam egg crate mattress" topping or a "therapeutic mattress." Am. Compl. ¶ 2. Mr. Henderson's back pain has become "unbearable" and constant. *Id.* ¶ 15.

Defendants were all allegedly aware of the poor condition of the mattresses supplied to the inmate population due to the volume of inmate complaints. *Id.* ¶ 26. Before Dr. Wu managed the inmate Correctional Managed Health Care ("CMHC"), medical staff allegedly prescribed double mattresses or egg crate toppings for inmates who suffered from pain in their backs, necks, hips, or shoulders. *Id.* ¶¶ 28, 37. Mr. Henderson alleges that "DOC took over medical care on or about (June, 2018) from the dissolved [CMHC], which was poorly manage[d] by then director of CMHC Dr. Johnny Wu[.]" *Id.* ¶ 33.

There is allegedly a policy and practice within DOC for inmates to receive a new mattress every year. *Id.* ¶ 29. As a mattress will allegedly "go bad" within as little as ten to fourteen days, an inmate is left to suffer for the duration of the remaining year to receive a replacement mattress. *Id.* ¶ 30. Mr. Henderson wrote to Director of Healthcare Dr. Wu about his "mattress issue," but Dr. Wu did not approve Mr. Henderson for a double mattress. *Id.* ¶ 55.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed.

3

R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy*

4

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and ... recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

**III.   DISCUSSION**

The statute of limitations for tort claims set forth in Connecticut General Statutes § 52-577 applies to claims brought under section 1983. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) ("Accordingly, § 52-577 should have been applied to plaintiffs' claims under §

1983. Since § 52-577 provides a three-year period of limitations, plaintiffs' claims were not barred."). Section 52-577 establishes a three-year limitations period for such claims running from "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577.

Although federal courts look to state law to determine the applicable statute of limitations for claims arising under section 1983, the court looks to federal law to determine when a federal claim accrues. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) ("In a federal question case . . . when a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues.") (citations omitted). A federal cause of action accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks and citation omitted). In the context of an excessive force claim, a plaintiff's action accrues when plaintiff knew of the injury arising from the alleged assault. *Vilchel v. Connecticut*, No. 3:07-CV-1344(JCH), 2008 WL 5226369, at *2 (D. Conn. Dec. 11, 2008).

Although the statute of limitations is generally raised as an affirmative defense, the court may dismiss a claim where the allegations of the complaint demonstrate that the relief sought is barred by the statute of limitations. *Walters v. Indus. And Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011); *Reese v. Lightner*, No. 3:18cv1922 (KAD), 2019 WL 2176342, at *3 (D. Conn. May 20, 2019) (collecting cases).

Defendants argue that Mr. Henderson's claims against Dr. Wu must be dismissed as barred by the statute of limitations because it is clear from the face of the Amended Complaint that the three-year statute of limitations against Dr. Wu expired in June 2021. Defs.' Mem at 4.

Defendants rely upon Mr. Henderson's allegation that DOC took over inmate medical care in "on or about" June 2018. *Id.* The Court takes judicial notice of publicly available information in the Department of Correction 2018-2019 Annual Report, which shows that DOC took over the responsibility for inmate healthcare on July 1, 2018.[2]

Thus, Dr. Wu, whom Mr. Henderson identifies as the Director of CMHC, was no longer involved with the provision of health care for the medical needs of Connecticut DOC inmates, including Mr. Henderson, as of July 1, 2018. As a result, Mr. Henderson's Eighth Amendment claim against Dr. Wu arose more than three years before the date he filed this action on August 10, 2021, and is, therefore, barred by the three-year statute of limitations.

Accordingly, the Court will grant Defendants' motion to dismiss.

### IV.     Conclusion

For the foregoing reasons and absent objection, the Court **GRANTS** Defendants' motion to dismiss.

The only remaining claims in this case involve Mr. Henderson's Eight Amendment claim against Dr. Feder in his individual capacity and official capacity, and Warden Martin in his official capacity only.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of March, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[2] The Court may "take judicial notice of relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *see also* https://portal.ct.gov/DAS/Lists/Publications?page=9 (Department of Correction 2018-2019 Annual Report at 15) ("After twenty years of contracting out medical services for offenders [to the University of Connecticut Health Center CMCH], on July 1, 2018, the Department of Correction took responsibility for the healthcare needs of the offenders under its supervision.").